**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Sergeiy Lon, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. _____ |
| | ) | JURY TRIAL DEMANDED |
| INTELIQUENT, INC., JAMES P. HYNES, LAWRENCE M. INGENERI, RIAN J. WREN, TIMOTHY A. SAMPLES, EDWARD M. GREENBERG, JOSEPH A. BEATTY, LAUREN F. WRIGHT, MATTHEW CARTER JR., GTCR LLC, ONVOY, LLC, and ONVOY IGLOO MERGER SUB, INC., | ) ) ) ) ) ) ) ) ) ) | CLASS ACTION |
| Defendants. | ) | |

**CLASS ACTION COMPLAINT FOR VIOLATION OF THE
SECURITIES EXCHANGE ACT OF 1934 AND DEMAND FOR JURY TRIAL**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on November 3, 2016 (the "Proposed Transaction"), pursuant to which Inteliquent, Inc. ("Inteliquent" or the "Company") will be acquired by GTCR LLC ("GTCR") and merged with Onvoy Igloo Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Onvoy, LLC ("Parent," and together with Merger Sub and GTCR, the "Acquiring Parties").

2. On November 2, 2016, Inteliquent's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger

(the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, shareholders of Inteliquent will receive $23.00 per share in cash.

3. On December 2, 2016, defendants filed a Preliminary Proxy Statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. As set forth herein, the Proxy Statement omits material information with respect to the Proposed Transaction. Accordingly, plaintiff alleges that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff Sergeiy Lon is, and has been continuously throughout all times relevant hereto, the owner of Inteliquent common stock.

9.     Defendant Inteliquent, Inc. is a Delaware corporation and maintains its principal executive office at 550 West Adams Street, 9th Floor, Chicago, Illinois 60661.  Inteliquent's common stock is traded on the Nasdaq GS under the ticker symbol "IQNT."

10.     Defendant James P. Hynes ("Hynes") is a director of Inteliquent and has served as Chairman of the Board since December 2006.

11.     Defendant Lawrence M. Ingeneri ("Ingeneri") has served as a director of Inteliquent since 2006.  According to the Company's Definitive Proxy Statement filed with SEC on April 8, 2016 (the "2016 Proxy"), Ingeneri is a member of the Audit Committee and the Nominating and Corporate Governance Committee.

12.     Defendant Rian J. Wren ("Wren") has served as a director of Inteliquent since February 2006.

13.     Defendant Timothy A. Samples ("Samples") has served as a director of Inteliquent since 2011.  According to the Company's 2016 Proxy, Samples is Chair of the Compensation Committee and a member of the Audit Committee.

14.     Defendant Edward M. Greenberg ("Greenberg") has served as a director of Inteliquent since 2011.  According to the Company's 2016 Proxy, Greenberg is Chair of the Nominating and Corporate Governance Committee and a member of the Compensation Committee.

15.     Defendant Joseph A. Beatty ("Beatty") has served as a director of Inteliquent since 2013.  According to the Company's 2016 Proxy, Beatty is Chair of the Audit Committee and a member of the Nominating and Corporate Governance Committee.

16.     Defendant Lauren F. Wright ("Wright") has served as a director of Inteliquent since 2014.  According to the Company's 2016 Proxy, Wright is a member of the Audit

Committee and the Compensation Committee.

17.    Defendant Matthew Carter Jr. ("Carter") is a director of Inteliquent and has served as President and Chief Executive Officer ("CEO") since June 2015.

18.    The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

19.    Defendant GTCR LLC is a limited liability company and a private equity firm.

20.    Defendant Onvoy, LLC is a Minnesota limited liability company and a party to the Merger Agreement.

21.    Defendant Onvoy Igloo Merger Sub, Inc. is a Delaware corporation and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

22.    Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Inteliquent (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

23.    This action is properly maintainable as a class action.

24.    The Class is so numerous that joinder of all members is impracticable.  As of November 2, 2016, there were approximately 34,421,923 shares of Inteliquent common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

25.     Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

26.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class.  Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

27.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

28.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company*

29.     Inteliquent provides a comprehensive suite of innovative voice services.

30.     The Company's voice services include streamlined SIP interconnection for domestic and international long distance traffic.

31.     Inteliquent also offers terminating and originating access that supports billions of minutes of traffic each month.

32.     On April 28, 2016, Inteliquent issued a press release wherein it reported its first quarter 2016 results.  The Company reported, among other things, that it launched Omni, a

comprehensive voice and messaging solution for the next generation provider space. The Company generated revenue of $82.3 million in the first quarter of 2016, an increase of 49.4%, or $27.2 million, from $55.1 million of revenue in the first quarter of 2015. First quarter minutes of use increased 6.7% compared to the fourth quarter of 2015. Net income was $9.1 million, compared to $8.7 million in the fourth quarter of 2015. Adjusted EBITDA was $19.1 million compared to $18.4 million in the fourth quarter 2015. Additionally, the Company's quarterly dividend increased to $0.16 per outstanding share of common stock, which represented a 6.7% increase. With respect to the results, Individual Defendant Carter, Inteliquent's President and CEO, commented:

> Our first quarter results got us off to a great start to 2016 and were in line with our expectations[.] The quarterly sequential growth in minutes, revenue and adjusted EBITDA reflects successful execution across all pillars of our Growth Forward Plan. In addition, we focused on diversifying our revenue in the quarter with the launch of Inteliquent's Omni service, our comprehensive voice and messaging solution for the next generation provider space. With Omni, we can provide our customers with a one-stop shop solution for the delivery of all of their inbound and outbound voice calls, message-enabled telephone numbers and inbound and outbound SMS and MMS messaging, all powered by the market's most user-friendly Web portal and APIs for integration and automation. We are pleased by the customer activity on our portal and the number of telephone numbers ordered during the quarter.

33.      On August 2, 2016, Inteliquent issued a press release wherein it reported its second quarter 2016 results. The Company reported that revenue increased 71.6% to $90.8 million compared to $52.9 million in the second quarter of 2015. Second quarter minutes of use increased 55.8% compared to the second quarter of 2015. The Company also reported that, during the quarter, it hired next-generation industry innovators and expanded its Omni IQ product line through the acquisition of next-generation software and a switching platform. With respect to the results, Individual Defendant Carter commented:

We continued to deliver a strong and consistent performance during the second quarter as we achieved our fourth consecutive quarter of sequential revenue and traffic growth, reflecting the successful implementation of our Growth Forward business strategy[.] The acquisition of Shopety's Next-Generation Software and Switching Platform will expand the capabilities and addressable market of our Omni IQ product line by allowing more customers to use Inteliquent's services, and diversify our revenue stream. Overall, we are pleased with the positive momentum to transform our business and our positioning in the market to deliver value for our shareholders.

### *Background of the Proposed Transaction*

34.     The Proposed Transaction is the result of a flawed, single-bidder process led by Individual Defendant Carter, who, along with the rest of Inteliquent's management team, will apparently retain their positions following the merger.

35.     According to the Proxy Statement, in February 2016, members of Inteliquent's senior management, including Individual Defendant Carter, met with Lawrence C. Fey ("Fey"), a managing director of GTCR, to discuss potential strategic opportunities between Inteliquent, GTCR, and Onvoy.

36.     Shortly thereafter, on February 25, 2016, the Company and GTCR entered into a confidentiality agreement.

37.     On May 25, 2016, Inteliquent senior management, including Carter, met telephonically with Fey and members of Onvoy's management, including Fritz Hendricks ("Hendricks"), to review Onvoy's business.[1]

38.     On June 8, 2016, Carter and Hendricks met and discussed Inteliquent's potential acquisition of Onvoy.

---

[1] In April 2016, GTCR's affiliates acquired 100% of the outstanding equity interests in Onvoy.

39.     On June 14, 2016, Inteliquent submitted an indication of interest to GTCR to acquire Onvoy for approximately $275 million to $325 million.  GTCR responded that it instead wished to explore the potential acquisition of Inteliquent.

40.     On July 11, 2016, Carter met with Fey and a managing director of GTCR to discuss a potential transaction between GTCR, Onvoy, and the Company.

41.     On August 17, 2016, GTCR and Onvoy submitted an indication of interest to acquire Inteliquent for $22.00 to $23.00 per share in cash.

42.     On September 13, 2016, GTCR and the Company executed an amended and restated confidentiality agreement.

43.     On September 22, 2016, Inteliquent senior management, including Carter, met with representatives of GTCR, including Fey, and members of Onvoy's senior management, including Hendricks.  Carter met again with Fey and Hendricks on October 10.

44.     On October 30, 2106, GTCR and Onvoy submitted a "final" proposal to acquire Inteliquent for $23.00 per share – the ultimate merger consideration.

45.     The next day, the Board met and approved the Proposed Transaction, and the parties executed the Merger Agreement on November 2.

46.     Also on November 2, Inteliquent, GTCR, and Onvoy issued a press release announcing the Proposed Transaction.  In the press release, Fey stated:  "We are excited to partner with the Inteliquent and Onvoy management teams to create a leading provider of communications enablement solutions."  Additionally, Hendricks commented:  "We look forward to working with the Inteliquent team to continue the network expansion and to empower innovation for our shared customer base."

47.     On November 18 and 28, 2016, the Board met to discuss the status of the "go-shop" process.   The Proxy Statement fails to disclose the results of such process, including whether any potential bidders engaged in due diligence or submitted any proposals to acquire Inteliquent.

### The Preclusive Merger Agreement

48.     Despite a limited and inadequate post-signing "go-shop" period, the Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.   Section 5.4(b) of the Merger Agreement states, in relevant part:

> (b) From and after the Solicitation Period End-Date, except with respect to Excluded Parties, the Company shall, and shall cause its Subsidiaries to, and instruct its and their respective Representatives to, (A) immediately cease and cause to be terminated any discussions or negotiations with any Third Person that may be ongoing with respect to any Alternative Proposal, and (B) request within two (2) Business Days of the Solicitation Period End-Date that each such Third Person promptly return or destroy all confidential information concerning the Company and its Subsidiaries. From the Solicitation Period End-Date until the earlier of termination of this Agreement or the consummation of the transactions contemplated hereby, except as expressly permitted by Section 5.4(e), the Company shall not, and shall cause its Subsidiaries not to, and instruct its and their respective Representatives not to, (i) solicit, initiate or knowingly facilitate or encourage (including by way of furnishing non-public information or providing access to the businesses, properties, books, records or personnel of the Company and its Subsidiaries) any inquiries regarding, or the making of any proposal or offer that constitutes, or the Company reasonably expects to lead to, an Alternative Proposal, (ii) have any discussions (other than to state that the Company is not permitted to have discussions) or participate in any negotiations regarding an Alternative Proposal or any inquiry or offer that the Company reasonably expects to lead to an Alternative Proposal, (iii) execute or enter into any Contract with respect to an Alternative Proposal, or approve or recommend an Alternative Proposal or any agreement, understanding or arrangement relating

to an Alternative Proposal, (iv) take any action to make the provisions of any takeover statute inapplicable to any transaction contemplated by an Alternative Proposal, or (v) publicly do or propose to do any of the foregoing.

49. Further, the Company must advise the Acquiring Parties, within two business days, of any proposals or inquiries received from other parties. Section 5.4(c) of the Merger Agreement states, in relevant part:

> From and after the Solicitation Period End-Date (and including, for the avoidance of doubt, with respect to any Alternative Proposal received prior to the Solicitation Period End-Date, the foregoing information with respect to such Alternative Proposal and whether the Company Board has designated the Third Person making such Alternative Proposal as an Excluded Party), the Company shall advise Parent of the receipt of any Alternative Proposal, or any inquiry with respect to, or that could reasonably be expected to lead to, any Alternative Proposal (in each case within two (2) Business Days of receipt thereof) and specify the material terms and conditions thereof, including the identity of the Third Person making such Alternative Proposal and an unredacted copy of the Alternative Proposal submitted by such Third Person (including any materials relating to such Third Person's proposed financing sources, if any). The Company shall notify Parent within two (2) Business Days of any material modifications to the financial or other material terms of such Alternative Proposal or inquiry.

50. Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants the Acquiring Parties a "matching right" with respect to any "Superior Proposal" made to the Company. Section 5.4(e) of the Merger Agreement provides:

> (e) Notwithstanding Section 5.4(d), the Company Board may, before obtaining the Requisite Company Vote, in response to a bona fide written Alternative Proposal received by the Company Board after the date of this Agreement but before the Requisite Company Vote and determined by the Company Board in good faith, based on the information then available and after consultation with its outside legal counsel and financial advisor, to be a Superior Proposal, effect a Company Adverse Recommendation Change (and if the Company Board so chooses, terminate this Agreement pursuant to Section 7.4(a) to enter into a definitive written Contract with respect to such Superior Proposal), but only if:

(i) such Superior Proposal, or Alternative Proposal that was a predecessor thereto, did not result, directly or indirectly, from a breach (other than an unintentional and immaterial breach) by the Company of this Section 5.4 and the Company shall have otherwise complied in all material respects with all of its obligations under this Section 5.4 with respect to such Superior Proposal;

(ii) the Company shall have first provided prior written notice to Parent that it is prepared to effect a Company Adverse Recommendation Change and terminate this Agreement to enter into a definitive written Contract with respect to a Superior Proposal, as applicable, which notice shall include (A) the identity of the Third Person making such Superior Proposal, (B) the terms and conditions of the transaction that constitutes such Superior Proposal and (C) an unredacted copy of such Superior Proposal (including any materials relating to such Third Person's proposed financing sources, if any);

(iii) after providing such notice, the Company shall have negotiated, and shall have caused its Representatives to negotiate, with Parent and its Representatives in good faith (to the extent Parent desires to negotiate) during the three (3) Business Day period after delivery of the notice contemplated by clause (ii) above (it being understood that any amendment to the financial terms or other material terms of such Superior Proposal shall require a new written notification pursuant to the foregoing clause (ii) and a new period of negotiation under this clause (iii) of two (2) instead of three (3) Business Days), to make such adjustments in the terms and conditions of this Agreement, the Debt Commitment Letter, the Equity Commitment Letter and the Limited Guaranty as would permit the Company Board to determine that the Alternative Proposal would no longer constitute a Superior Proposal;

(iv) the Company Board shall have considered in good faith any changes to this Agreement, the Debt Commitment Letter, the Equity Commitment Letter and the Limited Guaranty that may be offered in writing by Parent no later than 5:00 p.m. (Chicago time) on the last day of such three (3) Business Day or two (2) Business Day period, as applicable, and referred to (without duplication) in clause (iii) above, in a manner that would form a binding contract if accepted by the Company, and shall have determined that the Superior Proposal would continue to constitute a Superior Proposal if such changes were to be given effect; and

(v) the Company Board shall have determined in good faith, after the conclusion of the negotiations provided for in clause (iii) above and consideration of any changes to this Agreement, the Debt Commitment Letter, the Equity Commitment Letter or the Limited Guaranty offered by Parent pursuant to clause (iv) above, without duplication, and consultation with outside legal counsel and financial advisor, that failure to effect a Company Adverse Recommendation Change and terminate this Agreement to enter into a definitive written Contract with respect to a Superior Proposal would be inconsistent with its fiduciary duties under applicable Law.

51.     Further locking up control of the Company in favor of the Acquiring Parties, the Merger Agreement provides for a "termination fee" of up to $26 million, payable by the Company to the Acquiring Parties if the Individual Defendants cause the Company to terminate the Merger Agreement.

52.     By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

***Inadequate Merger Consideration and Interests of the Company's Officers and Directors***

53.     The consideration to be provided to plaintiff and the Class in the Proposed Transaction is inadequate.

54.     Among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

55.     Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

56.     Meanwhile, certain of the Company's officers and directors stand to receive significant benefits as a result of the Proposed Transaction.

57.     For example, the members of Inteliquent's management team will apparently retain their positions following the close of the Proposed Transaction.

58.     Moreover, Individual Defendant Carter stands to receive $2,552,379 in golden parachute compensation in connection with the Proposed Transaction, and the Company's other executive officers stand to receive an additional over $4.08 million.

*The Proxy Statement Omits Material Information*

59.     Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

60.     The Proxy Statement omits material information regarding the Proposed Transaction, which renders the Proxy Statement false and misleading.

61.     First, the Proxy Statement omits material information regarding the potential conflicts of interest of the Company's officers and directors.

62.     In the press release announcing the Proposed Transaction, Fey, Managing Director of GTCR, stated:  "We are excited to partner with the Inteliquent and Onvoy management teams to create a leading provider of communications enablement solutions." Additionally, Hendricks, CEO of Parent, commented:  "We look forward to working with the Inteliquent team to continue the network expansion and to empower innovation for our shared customer base."

63.     However, the Proxy Statement fails to disclose the timing and nature of all communications regarding future employment and/or directorship of Inteliquent's officers and directors, including who participated in all such communications.

64.     The Proxy Statement only discloses the following, which is itself materially misleading:

> Prior to the effective date of the merger, some or all of the Company's executive officers may discuss or enter into agreements, arrangements or understandings with Parent or its affiliates regarding the executive officers' continuing employment or compensation and benefits, including equity incentive arrangements, on a going-forward basis following completion of the merger. No such new agreements, arrangements and understandings have been entered into as of the date of this proxy statement.

65.     Moreover, in a November 10, 2016 email to the Company's employees, Individual Defendant Carter stated that "we have not yet engaged in *detailed* discussions with GTCR or Onvoy about what the post-closing organization might look like."  (Emphasis added).

66.     Accordingly, the Proxy Statement is materially incomplete and misleading, and the timing and nature of all communications – including GTCR's and/or Onvoy's first communication – regarding post-transaction employment must be disclosed.

67.     This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

68.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement:  (i) "Background of the Merger"; (ii) "Recommendation of the Board and Reasons for the Merger"; and (iii) "Interests of the Company's Directors and Executive Officers in the Merger."

69.     Second, the Proxy Statement omits material information regarding Inteliquent's financial projections and the financial analyses performed by the Company's financial advisor, Perella Weinberg Partners LP ("Perella"), in support of its so-called fairness opinion.

70.     For example, with respect to Perella's *Discounted Cash Flow Analyses*, the Proxy Statement fails to disclose:   (i) Inteliquent's projected unlevered free cash flows and its components, including other income (and a description of what is included in other income), taxes, changes in working capital, other investments (and a description of what is included in other investments), deferred taxes and other items (and a description of what is included in other items) for the core business, the Next Gen business, and Inteliquent as a whole, for all years of

the projection period; (ii) a description of the analysis that yielded the cost of capital range of 7.75%-8.75% for Inteliquent's core business; (iii) a description of the assessment that yielded the cost of capital range of 15.00%-20.00% for Inteliquent's Next Gen business; (iv) the dataset of comparable companies and their respective observed multiples used to derive the selected exit multiple range of 8.0x-12.0x for Inteliquent's Next Gen business; and (v) the net cash of Inteliquent as of June 30, 2016 per Company senior management's guidance, as used by Perella.

71.     The Proxy Statement further fails to disclose the "certain refinements" to the Preliminary Projections as presented to the Board on August 22 and September 1, 2016.

72.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisors in support of their fairness opinions.

73.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; (ii) "Recommendation of the Board and Reasons for the Merger"; (iii) "Opinion of the Company's Financial Advisor"; and (iv) "Certain Prospective Financial Information."

74.     Third, the Proxy Statement fails to disclose the results of the "go-shop" process, including whether any potential buyers engaged in due diligence and/or submitted any proposals to acquire Inteliquent.

75.     The Company's stockholders are entitled to an accurate description of the "process" the directors used in coming to their decision to support the Proposed Transaction.

76.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement:  (i) "Background of the Merger"; and (ii) "Recommendation of the Board and Reasons for the Merger."

77.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Inteliquent's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Inteliquent

78.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

79.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Inteliquent is liable as the issuer of these statements.

80.     The Proxy Statement was prepared, reviewed, approved, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

81.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

82.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on

the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

83.     The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

84.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

85.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and the Acquiring Parties

86.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

87.     The Individual Defendants and the Acquiring Parties acted as controlling persons of Inteliquent within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Inteliquent and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

88.     Each of the Individual Defendants and the Acquiring Parties was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

17

89. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Proxy Statement.

90. The Acquiring Parties also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

91. By virtue of the foregoing, the Individual Defendants and the Acquiring Parties violated Section 20(a) of the 1934 Act.

92. As set forth above, the Individual Defendants and the Acquiring Parties had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Ordering that this action may be maintained as a class action and certifying plaintiff as the Class representative and plaintiff's counsel as Class counsel;

B. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

D.      Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

E.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

F.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

G.      Granting such other and further relief as this Court may deem just and proper.

**<u>JURY DEMAND</u>**

Plaintiff respectfully requests a trial by jury on all issues so triable.


Dated: December 9, 2016        By:   */s/ Theodore B. Bell*
                                              Theodore B. Bell
                                              Carl V. Malmstrom
                                              **WOLF HALDENSTEIN ADLER**
                                              **FREEMAN & HERZ LLC**
                                              70 West Madison Street
                                              Suite 1400
                                              Chicago, IL 60602
                                              (312) 984-0000
                                              tbell@whafh.com
                                              Malmstrom@whafh.com

                                              Brian D. Long
                                              Gina M. Serra
                                              **RIGRODSKY & LONG, P.A.**
                                              2 Righter Parkway, Suite 120
                                              Wilmington, DE 19803
                                              (302) 295-5310
                                              BDL@rl-legal.com
                                              GMS@rl-legal.com

                                              Richard A. Maniskas
                                              **RYAN & MANISKAS, LLP**
                                              995 Old Eagle School Road, Suite 311
                                              Wayne, PA 19087
                                              (484) 588-5516

                                              *Attorneys for Plaintiff*

## CERTIFICATION OF PLAINTIFF

I, SERGIY LON ("Plaintiff"), hereby declare as to the claims asserted under the federal securities laws that:

1. Plaintiff has reviewed the complaint and authorizes its filing.

2. Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3. Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, including providing testimony at deposition or trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon the execution of this Certification.

4. Plaintiff's purchase and sale transactions in the Inteliquent, Inc. (Nasdaq GS: IQNT) security that is the subject of this action during the class period is/are as follows:

<table>
<tr><td colspan="3">**PURCHASES**</td><td colspan="3">**SALES**</td></tr>
<tr><th>Buy Date</th><th>Shares</th><th>Price per Share</th><th>Sell Date</th><th>Shares</th><th>Price per Share</th></tr>
<tr><td>13-Jan-2010</td><td>1300</td><td>20.00</td><td></td><td></td><td></td></tr>
<tr><td></td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td></td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td></td><td></td><td></td><td></td><td></td><td></td></tr>
</table>

*Please list additional transactions on separate sheet of paper, if necessary.*

5. Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including Plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

6.      During the three years prior to the date of this Certification, Plaintiff has not moved to serve as a representative party for a class in an action filed under the federal securities laws.

7.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _7th_ day of _December_, 2016.

_____

Sergiy Lon

2